**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

9    STUART J. KAUFMAN,                          No. C-11-1301 JCS

10            Plaintiff,                          **ORDER GRANTING DEFENDANTS'
                                                   MOTION TO DISMISS**
11        v.

12   CAPITAL QUEST, INC., WILLIAM               **[Docket Nos. 14, 16]**
     KRUEGER, HEATHER ANDERSON,
13   HOWARD & HOWARD, P.C.,

14            Defendants.
     _____/
15

16   **I.      INTRODUCTION**

17         Plaintiff Stuart J. Kaufman initiated this action in the United States District Court for the

18   Northern District of California on March 17, 2011, bringing claims against Defendants Capital

19   Quest, Inc. ("CQ") and William Krueger (collectively "CQ&K") and Defendants Howard &

20   Howard, P.C. ("Howard Firm") and Heather Anderson (collectively "H&A") for abuse of process,

21   malicious prosecution, intentional infliction of emotional distress, fraud and defamation.  H&A have

22   filed a Motion to Dismiss; Motion to Strike; or in the Alternative Motion to Transfer ("H&A

23   Motion").  Dkt. No. 14.  CQ&K have filed a Motion to Strike Plaintiff Kaufman's State Law Claims

24   Pursuant to Cal. Code of Civil Procedure § 425.16 ("CQ&K Motion").  Dkt. No. 16.  CQ&K have

25   also filed a Notice of Joinder in H&A's Motion to Dismiss with respect to Part V, regarding judicial

26   estoppel. Dkt. No. 17.  The parties have consented to the jurisdiction of a United States Magistrate

27   Judge pursuant to 28 U.S.C. § 636(c).  On Friday, November 18, 2011, at 1:30 p.m., a hearing was

28   held on both motions, and for the reasons stated below, the H&A Motion is GRANTED in part and

the CQ&K Motion is DENIED as moot.

## II.    BACKGROUND

### A.    The Complaint

#### 1.    Plaintiff's Employment Relationship With Defendants CQ&K

In his Complaint (Dkt. No. 1), Plaintiff alleges that he is a resident of San Francisco, California and all Defendants are citizens of the state of Tennessee, with their sole or principal places of business in Tennessee. Complaint at ¶ 1. Plaintiff alleges that this action arose out of his former employment relationship with CQ as a consultant, which spanned from February 1, 2008 through October 22, 2008. *Id.* at ¶ 3. Plaintiff maintains that prior to being hired by CQ, he had discussions with CQ's President, Krueger, over telephone and email about Plaintiff working with CQ, but no such communications took place in person, nor did Plaintiff travel to Tennessee. *Id.* at ¶¶ 6, 8.

Plaintiff alleges that soon after his contract with CQ was executed, but before his work began, CQ sent a fellow consultant to Plaintiff's home in San Francisco to provide detailed training and provide Plaintiff with sample reports and documents. *Id.* at ¶ 13. Plaintiff alleges that these training techniques, sample reports and documents provided by CQ made it clear that he was to be treated as a closely supervised employee, not as an independent contractor as originally believed. *Id.* Plaintiff alleges that upon beginning work on his first assignment, he was placed under the direct supervision of a more senior CQ consultant, John Fitzpatrick. *Id.* at ¶ 15. Plaintiff further claims that he later traveled to Fitzpatrick's home near St. Louis, Missouri for further training in CQ methods. *Id.* at ¶ 16

Plaintiff alleges that on October 22, 2008, due to "the steep and sudden stock market crash" and for other unknown reasons, Plaintiff was taken off of his current assignment and was then laid off by CQ for want of additional work. *Id.* at ¶ 17. Plaintiff alleges that he learned of this layoff via telephone call from Krueger, followed the next day by a confirming email in which Krueger requested that Plaintiff return all CQ-related materials that Plaintiff had in his possession. *Id.* Plaintiff further claims that although he knew that the client he was working for was "not happy," it was not because of unsatisfactory work done by Plaintiff. *Id.* at ¶ 21. In fact, Plaintiff alleges that

United States District Court

For the Northern District of California

1  Krueger had earlier praised Plaintiff for his work on this assignment and had incorporated some of

2  Plaintiff's work into a model to be used by other CQ consultants.  *Id.*

3                    **2.      Plaintiff's Administrative Actions**

4         Plaintiff claims that CQ&K refused to pay Plaintiff during the 30 day termination period as

5  stipulated in his contract with CQ.  *Id.* at ¶ 18.  Plaintiff further alleges that CQ&K also refused

6  Plaintiff's demand for payment of certain deferred compensation.  *Id.*  Plaintiff asserts that the only

7  payment CQ&K was willing to make to Plaintiff was for an unpaid $200 per diem debt.  *Id.*

8         Plaintiff applied to the California Equal Development Division ("EDD") for unemployment

9  benefits due to being laid off by CQ.  *Id.* at ¶ 22.  After an investigation by the California Franchise

10  and Tax Board as to Plaintiff's employment status, he was found to be an employee rather than an

11  independent contractor, and was therefore eligible to receive benefits from the EDD.  *Id.* at ¶ 23.

12  CQ filed an appeal of this finding.  *Id.*  The Unemployment Compensation Insurance Appeals Board

13  heard CQ's appeal, and according to Plaintiff, affirmed the decision to award benefits to Plaintiff.

14  *Id.* at ¶ 24.

15         According to Plaintiff, in January or February of 2009, he applied to the Division of Labor

16  Standards Enforcement ("DLSE") for an order compelling CQ to pay his unpaid compensation.  *Id.*

17  at ¶ 25.  Plaintiff alleges that at the DLSE hearing, Krueger explained that Plaintiff was not actually

18  laid off, but it was "simply a matter of not having any work for [Plaintiff] just at that time."  *Id.* at ¶

19  18.  However, Plaintiff alleges that Krueger's earlier conduct contradicts these statements.  *Id.*

20  Specifically, Plaintiff alleges that before this hearing Krueger had admitted to Plaintiff that he had in

21  fact been laid off, but still refused to compensate Plaintiff for the 30 day termination period or for

22  the deferred compensation.  *Id.*  Plaintiff asserts that Krueger's statements at the DLSE hearing were

23  intentionally false and "made for the purpose of defrauding Plaintiff of the full amount of his

24  earnings and other payments due."  *Id.* at ¶ 19.

25         Plaintiff asserts that on October 19, 2009, the DLSE found that "CQ had unilaterally caused

26  Plaintiff's status to be that of an employee, thereby voiding the independent contractor clause of the

27  Contract," and ordered CQ to pay Plaintiff $20,460 in unpaid wages, severance pay and interest.  *Id.*

28  at ¶ 27.  Plaintiff alleges that because CQ did not appeal the DLSE's finding, the decision became

United States District Court

For the Northern District of California

1  final. *Id.* at ¶ 28.

2          Plaintiff asserts that in April 2009, he applied to the SS-8 Unit of the IRS for a determination

3  of his employment status for federal tax purposes. *Id.* at ¶ 29.  According to Plaintiff, in June 2010,

4  the IRS notified Plaintiff and CQ that Plaintiff had been found to be an "independent contractor,"[1]

5  and directed each party to file amended tax returns reflecting the change of status.  *Id.*  Plaintiff

6  further claims that the potential liability imposed on CQ&K served as a major motivation for the

7  unspecified damages CQ&K claimed in a suit against Plaintiff ("Tennessee Case").  *Id.*

8          Plaintiff also alleges that at some point during these administrative proceedings,  Krueger

9  had threatened Plaintiff by telling him about another former consultant who unsuccessfully sued CQ

10  on "similar" claims and was forced to pay CQ's attorney's fees.  *Id.* at ¶ 20.  Plaintiff asserts that at

11  some point he received from Krueger a letter that acknowledged "Plaintiff's justifiable anger at his

12  treatment by. . . CQ," and offered Plaintiff a reduced amount in settlement of his claim, to which

13  Plaintiff refused.  *Id.* at ¶ 21.

14              **3.       The Tennessee Case**

15          Plaintiff alleges that sometime before September 9, 2009, Defendants H&A and CQ&K

16  formed a conspiracy to "gravely injure Plaintiff, financially and emotionally, by committing tortious

17  acts[.]" *Id.* at ¶ 30.  Plaintiff alleges that Anderson is an attorney licensed to practice law in

18  Tennessee and at all times relevant hereto was employed by Howard Firm in Knoxville, Tennessee.

19  *Id.* at ¶ 4.  Plaintiff further alleges that Howard Firm was retained by CQ&K in connection with

20  filing the Tennessee Case, which was entitled, *Capital Quest, Inc. v. Stuart Kaufman*, No. 09-157, in

21  the Chancery Court for Blount County, Tennessee.  *Id.*

22          In the complaint of the Tennessee Case, CQ alleged that Plaintiff had violated § 2 of his

23  employment contract with CQ by failing to maintain his status as an independent contractor.  *Id.* at ¶

24  34 and Exhibit C.  CQ prayed for full indemnification and attorney fees, as stated in the contract. *Id.*

25  Plaintiff asserts that, although no specific amount was alleged, the amount claimed by CQ could

26  have been more than a million dollars.  *Id.*

27

28          _____

          [1]Given the context of Plaintiff's Complaint and as stated in ¶¶ 38 and 78, it appears that  Plaintiff
meant to allege "employee" here, rather than "independent contractor."

United States District Court

For the Northern District of California

Plaintiff filed a motion to dismiss the Tennessee Case for lack of personal jurisdiction. *Id.* at ¶ 41. The Chancery Court found Plaintiff's contacts with Tennessee were sufficient to support the exercise of jurisdiction over Plaintiff. *Id.* at ¶¶ 32-33. Following the entry of the order denying Plaintiff's motion to dismiss, Plaintiff alleges that he filed an answer and affirmative defenses to avoid a default judgment, but any further defense in this case was financially impossible. *Id.* at ¶43.

Plaintiff asserts that prior to and during the Tennessee Case, Plaintiff was the debtor in a Chapter 13 bankruptcy case, in the U.S. Bankruptcy Court in this district. *Id.* at ¶ 44. Plaintiff claims that the only way he could end the Tennessee Case without having judgment entered in favor of CQ&K in an amount above what Plaintiff would have been able to pay, was to convert his bankruptcy case from Chapter 13 to Chapter 7. *Id.* On October 7, 2010, the court granted Plaintiff a discharge and the Tennessee Case was thereafter dismissed for that reason only. *Id.*

Plaintiff maintains that the Tennessee Case was "an impermissible collateral attack on a California decision that was *res judicata* and entitled to the full faith and credit of every other state, by virtue of the Labor Code and the United States Constitution." *Id.* at ¶ 35. Plaintiff further claims that the Tennessee Case violated California's anti-SLAPP statute and if an indemnification suit had been brought in California, the case would be treated as a *per se* abuse of process. *Id.* Plaintiff alleges that Defendants motive for bringing the Tennessee Case was to "harass, defame, punish, ruin, humiliate, and otherwise cause severe financial and emotional injury to Plaintiff." *Id.* at ¶ 36. According to Plaintiff, Defendants intended to make an example of Plaintiff to other CQ employees who may wish to take similar actions against CQ. *Id.*

Plaintiff alleges that other than lack of proper jurisdiction, the Tennessee Case was "abusive, malicious and professionally unethical . . . for other major substantive reasons," including: the foundation of CQ's claim for indemnification, which rests on the conduct of the employee not the employer. *Id.* at ¶ 37. Plaintiff asserts that Defendants maliciously proceeded with the Tennessee Case for no reason other than they thought they could get away with it. *Id.*

Plaintiff also claims that the Tennessee Case was an abuse of the judicial power of the State of Tennessee in order to punish Plaintiff for refusing to join the Defendants in a "criminal conspiracy" to "enable [CQ to evade] its duty to pay federal and state payroll taxes" and other

1  expenses.  *Id.* at ¶¶ 38-39.

3           **4.     The Present Case**

4           Plaintiff's first claim is for abuse of process against all Defendants.  Plaintiff asserts that all

5  Defendants acted in concert to abuse the process of the Tennessee Court by filing CQ's complaint

6  against Plaintiff.  *Id.* at ¶ 47.  Plaintiff alleges that Defendants' intended to injure Plaintiff and make

7  an example of Plaintiff to other CQ employees.  *Id.*  Additionally, Plaintiff claims that Defendants

8  intended to "disgorge" Plaintiff of the $20,460 that CQ was ordered to pay Plaintiff by the DLSE.

9  *Id.* at ¶ 48.  In support of this allegation, Plaintiff asserts that Defendant Anderson made a comment

10  to Plaintiff's Tennessee counsel implying that if Plaintiff were to make an appearance in person in

11  the Tennessee Case, he would be using up the $20,000.  *Id.*  Plaintiff asserts that the filing of the

12  Tennessee Case has directly damaged Plaintiff by forcing him to incur counsel fees of $5,007.65.

13  *Id.* at ¶ 50.  Plaintiff further asserts that Defendants' conduct has also damaged Plaintiff by causing

14  "extreme and prolonged emotional distress, including anxiety, fear, fatigue, depression, loss of sleep,

15  and a deep, gnawing and intense feeling of anger and powerlessness[.]" *Id.* ¶ 51.  Plaintiff maintains

16  that these feelings began upon being laid off on October 22, 2008, continued to grow in strength

17  during the proceedings to determine Plaintiff's employment status, and were further intensified by

18  the filing and subsequent proceedings of the Tennessee Case, including the fear of owing Defendants

19  a sum of money that Plaintiff could not afford.  *Id.*  Plaintiff also claims that these feeling were

20  further exacerbated by wasting his money in defending the Tennessee Case.  *Id.* at ¶ 55.

21          Plaintiff's second claim is for malicious prosecution against all Defendants for bringing the

22  Tennessee Case.  First, because CQ did not appeal the DLSE's award to Plaintiff, the decision

23  became final and *res judicata* as to all matters adjudicated therein.  *Id.* at ¶ 63.  Therefore, Plaintiff

24  claims, it was binding on the courts of Tennessee.  *Id.*  Second, Plaintiff asserts that the Tennessee

25  Case was maliciously prosecuted because it violated the California anti-SLAPP statute.  *Id.* at ¶¶ 65-

26  66.

27          Plaintiff's third claim is for intentional infliction of severe emotional distress against all

28  Defendants.  Plaintiff alleges that Defendants' conduct was "outrageous, egregious, unprivileged,

**United States District Court**
For the Northern District of California

and done with intent to inflict mental suffering[.]" *Id.* at ¶ 70.  Plaintiff asserts that he was unusually susceptible to emotional distress prior to the filing of the Tennessee Case because of CQ&K's conduct, including withholding Plaintiff's compensation, Krueger's opposition to Plaintiff's application for unemployment benefits, and threats Krueger made to Plaintiff of serious financial losses.  *Id.* at ¶¶ 71-72.  Additionally, he claims that all Defendants must be presumed to have been aware of his heightened susceptibility.  *Id.* at ¶ 71.  Finally, Plaintiff also incorporates the damages he suffered as a result of Defendants' abuse of process and malicious prosecution, as discussed above, in further support of his claim for intentional infliction of severe emotional distress.  *Id.* at ¶ 73.

Plaintiff's fourth claim is for fraud against all Defendants.  Here, Plaintiff claims that Defendants have committed at least three acts of fraud.  *Id.* at ¶ 75.  First, Plaintiff claims that CQ has committed fraud by classifying its consultants as independent contractors instead of employees. *Id.* at ¶ 76.  Plaintiff asserts CQ classified its consultants in this way to defraud Plaintiff and others into paying self-employment tax and to fraudulently avoid paying its own payroll tax and withholding liabilities to state governments and the IRS.  *Id.* at ¶ 77.  Plaintiff further asserts that upon the finding that Plaintiff was an employee, and not an independent contractor, the IRS instructed Plaintiff and CQ to file amended tax returns indicating the change in employment status. *Id.* at ¶ 78.  Plaintiff asserts that he is owed $3,558.50 in tax return as a result of CQ's fraud.  *Id.* This forced loan, as Plaintiff describes it, contributed to Plaintiff's emotional distress.  *Id.*  Plaintiff claims that because CQ has refused to make Plaintiff whole, the fraud has continued to the present day.  *Id.* at ¶ 79.  Furthermore, because H&A have joined CQ&K in filing the Tennessee Case and other conspiracies to injure Plaintiff, they too are liable for this fraud.  *Id.*

Plaintiff alleges that the second fraud committed by Defendants arose out of Krueger's denial that he had terminated Plaintiff's employment contract, and was therefore not liable for certain payments due to Plaintiff pursuant to the terms of the contract.  *Id.* at ¶ 80.  Plaintiff further asserts that Krueger made the promise of a 30 day notice of termination period without the intent to perform on it.  *Id.*

Plaintiff alleges that the third fraud committed by Defendants consisted of CQ's requirement

that Plaintiff, and all CQ consultants, pay for all of his travel expenses, including air fare, hotels, meals, rental cars, and incidentals, out of his wages and a $200 per diem payment for days actually spent at clients' offices. *Id.* at ¶ 82. Plaintiff asserts that CQ justified this policy on the ground that Plaintiff was an independent contractor. *Id.* Plaintiff asserts that any claimed ignorance by Krueger of the true nature of Plaintiff's employment status was deliberate and disingenuous. *Id.* Plaintiff further alleges that although he was eventually made whole for having to pay for these expenses, Plaintiff was still damaged by having to make a forced loan to CQ in the amount of those expenses. *Id.* at ¶ 83.

Plaintiff's fifth claim against all defendants is for defamation. Plaintiff asserts that, upon personal knowledge, and partly upon information and belief, CQ&K have made false statements about Plaintiff to third parties. *Id.* at ¶ 84. Plaintiff maintains that these false statements were made to an unknown number of persons for the intended purpose of damaging Plaintiff's reputation. *Id.* Furthermore, Plaintiff alleges that Defendants intended to make it difficult for Plaintiff to find future employment in the field of capital campaign consulting. *Id.* Plaintiff further asserts that Defendants conspired to use the Tennessee Case as a means to repeat and further these defamatory statements. *Id.* at ¶ 85. Additionally, Plaintiff claims that because the Tennessee Case was an abuse of process and maliciously prosecuted, the allegations and arguments therein are not protected by the litigation privilege. *Id.* ¶ 86. Plaintiff maintains that as a result of these defamatory statements and conduct by Defendants, Plaintiff's reputation has been damaged in the capital campaign consulting field. *Id.* at ¶ 87. Plaintiff asserts he is aware of two intentional and defamatory communications between Krueger and other fundraising professionals, which gives Plaintiff reason to infer he may have lost at least one employment opportunity. *Id.* Plaintiff alleges that the inability to find future employment, as a result of Defendants' conduct, has been a further source of Plaintiff's emotional distress. *Id.* at ¶ 88. Finally, Plaintiff alleges that all Defendants, including H&A, have conspired to commit these acts and are therefore jointly and severally liable. *Id.* at ¶ 89.

Plaintiff demands $700,000 for the intentional infliction of severe emotional distress; $500,000 for the injury to Plaintiff's reputation caused by defamation; $100,000 for fraud; $5,007.65 in counsel fees incurred in the Tennessee Case; punitive damages equal to five times the amount of

**United States District Court**
For the Northern District of California

1   compensatory damages awarded; and for costs and interest on all sums to which interest is

2   permitted. *Id.* at pg. 29. Plaintiff also demands injunctive relief enjoining Defendants: (1) from

3   threatening or bringing any claims against Plaintiff without first obtaining permission from this

4   Court and, (2) from making further statements to third parties about Plaintiff's character, reputation,

5   work history or trustworthiness. *Id.* at pg. 30.

6        **B.    The Howard & Howard Motion**

7        On September 9, 2011, Defendants Howard & Howard and Heather Anderson (collectively

8   "H&A") filed a Motion to Dismiss; Motion to Strike; or in the Alternative Motion to Transfer

9   ("H&A Motion") (Dkt. No. 14). H&A claim that Defendant Heather Anderson is a Tennessee

10  attorney employed at the Howard Firm. H&A Motion 2; Affidavit of Heather G. Anderson in

11  Support of H&A Motion ("Anderson Aff.") (Dkt. No. 15-1) at ¶¶ 2, 17. Anderson claims she has

12  never appeared in a California court, has not traveled to California in connection with representing a

13  client, except for one visit in 2000 before working for the Howard Firm, and has never associated

14  with a California attorney for the purpose of representing a client. H&A Motion 2; Anderson Aff. ¶¶

15  18-20. Furthermore, Anderson claims that she owns no interest, property or bank accounts in

16  California and does not maintain any address, phone number or other business presence in

17  California. H&A Motion 2-3; Anderson Aff. at ¶¶ 22-23. Anderson also claims she has never

18  advertised or solicited clients in California. H&A Motion 3; Anderson Aff. at ¶ 21.

19       Lewis Howard, Jr., Howard Firm's managing partner, assert that the Howard Firm has never

20  registered for or done business in California. H&A Motion 3; Affidavit of Lewis S. Howard, Jr. in

21  Support of H&A Motion ("Howard Aff.") (Dkt. No. 15-2) at ¶¶ 14,22. He further claims that

22  Howard Firm has one office in Knoxville, Tennessee, and does not maintain any other business

23  presence outside of Knoxville. H&A Motion 3; Howard Aff. at ¶ 12. Howard also asserts that the

24  firm has never employed an attorney that was licensed to practice in California, nor has any of the

25  Howard Firm's attorneys represented a client in a California court or associated with a California

26  attorney in the representation of a client. H&A Motion 3; Howard Aff. at ¶¶ 13, 15, 17. Finally,

27  Howard asserts that the Howard Firm owns no property or interest in any bank account in California

28  and has never advertised in California. H&A Motion 3; Howard Aff. at ¶¶ 18, 20.

United States District Court

For the Northern District of California

H&A assert that the Howard Firm was first retained by Krueger prior to July 2009 in connection with a real estate issue in Blount County, Tennessee.  H&A Motion 3; Howard Aff. at ¶ 6.  The Howard Firm was first retained by CQ to offer advice and representation regarding Plaintiff around July 17, 2009.  H&A Motion 3; Howard Aff. at ¶¶ 5,7.  H&A assert that the agreement between CQ and the Howard Firm was to be controlled by the laws of Tennessee.  H&A Motion 3; Howard Aff. at ¶ 8.  H&A further contend that the legal work performed by Anderson and the Howard Firm for CQ did not require travel to California or analysis of California law.  H&A Motion 3; Anderson Aff. at ¶ 6, 15; Howard Aff. at ¶ 9.  Furthermore, H&A assert that other than mailing the summons and complaint of the Tennessee Case to Plaintiff, no Howard Firm attorney sent anything to California via mail, fax or email.  H&A Motion 3-4; Anderson Aff. at ¶¶ 12-14, Howard Aff. at ¶ 9.

According to Defendant Anderson, she analyzed the employment contract between CQ and Plaintiff under Tennessee law, and thereafter prepared a complaint on behalf of CQ and filed it in the Chancery Court for Blount County, Tennessee.  H&A Motion 4; Anderson Aff. at ¶¶ 7-8.  In preparation for trial of the Tennessee Case, Anderson states that she "made a few calls to the California Employment Development Department ("EDD") in an effort to obtain certified copies of some documents," but no other phone calls were made to California.  H&A Motion 4; Anderson Aff. at ¶ 11.

H&A also argue that the return receipt that was filed, indicating service of the summons and complaint of this action on Anderson, was signed by an individual named Alix Ballew.  H&A Motion 4.  Anderson argues that this individual has not been designated as an agent to receive service of process for Anderson, nor had Anderson been served in person at her residence.  *Id.*; Anderson Aff. at ¶ 26.

H&A assert that Plaintiff filed for Chapter 13 bankruptcy in 2006, and upon the filing of the Tennessee Case in September 2009, Plaintiff converted his Chapter 13 bankruptcy to a Chapter 7 bankruptcy and specifically identified CQ (c/o the Howard Firm) as a new debt.  H&A Motion 5. H&A asserts that also at this time, Plaintiff filed amended schedules but did not disclose the instant claims against Defendants in this filing.  *Id.*

1    H&A argue that Plaintiff's claims should be dismissed and/or stricken for seven distinct

2    reasons:

3    First, H&A argue that dismissal is appropriate because this Court lacks personal jurisdiction

4    over H&A.  *Id.* at 6.  H&A assert they have no business presence in California to justify the exercise

5    of general jurisdiction.  *Id.* at 7.  H&A argue that the Howard Firm has never practiced law in

6    California, do not advertise, do not have an office, own property or bank accounts, nor associate

7    with attorneys in California.  *Id.*  Additionally, H&A argue that they lack sufficient minimum

8    contacts with California to justify the exercise of specific personal jurisdiction. *Id.*   Specifically,

9    H&A assert that their only contacts "with California are (1) service of a summons and complaint

10   upon Plaintiff by mail; and (2) a couple of telephone calls on one day, made by Anderson in an

11   effort to obtain exhibits for the trial in Tennessee." *Id.* at 8 (citing Anderson Aff. at ¶¶ 9, 11-13).

12   H&A further assert that the exercise of jurisdiction over them would not comport with fair play and

13   substantial justice.  *Id.* at 9.

14   Second, H&A maintain that Plaintiff's claims against Anderson should be dismissed because

15   Anderson was not personally served with the summons and complaint, in accordance with Federal

16   Rule of Civil Procedure 4.  *Id.* at 9-10.

17   Third, H&A assert that Plaintiff has failed to state a claim for which relief may be granted as

18   to all of his claims except malicious prosecution, where H&A's acts are protected by the litigation

19   privilege, under Cal. Civ. Code § 47.  *Id.* at 10.  Here, H&A argue that Plaintiff's claims against

20   them relate only to Howard Firm's representation of CQ in Tennessee, and therefore they are

21   protected by the litigation privilege.  *Id.* at 11.

22   Fourth, H&A claim that Plaintiff cannot establish a malicious prosecution case because he

23   cannot show that the Tennessee Case was terminated in his favor.  *Id.*  Here, H&A argue that

24   because the Tennessee Case was dismissed only because of Plaintiff's discharge in bankruptcy,

25   Plaintiff cannot argue that it was terminated in his favor.  *Id.* at 11-12.

26   Fifth, H&A argue that Plaintiff is judicially estopped from bringing his claims because he

27   failed to declare them in his amended schedules he filed at the time he converted his Chapter 13

28   bankruptcy into a Chapter 7.  *Id.* at 12-13.  H&A argue that these amended schedules were

1    accompanied by an executed declaration by Plaintiff, stating they were true and correct. *Id.* H&A

2    further assert that Plaintiff converted his bankruptcy to Chapter 7 because of the Tennessee Case,

3    and the Tennessee Case is the very basis for his claims against H&A. *Id.* at 13.

4        Sixth, H&A argue that Plaintiff's claims should be stricken pursuant to California's Anti-

5    SLAPP statute, Cal. Code Civ. P. § 425.16. *Id.* at 13. They argue that the first prong of an anti-

6    SLAPP motion is satisfied because Plaintiff's allegations all arise from a protected activity – H&A's

7    representation of CQ in the Tennessee Case. *Id.* at 13-14. H&A further argue that they meet the

8    second prong because Plaintiff is unable to show a probability of prevailing on the merits of the

9    Tennessee Case. H&A maintain that for these reasons, Plaintiff's claims must be stricken and H&A

10   should be awarded attorney's fees, pursuant to § 425.16(e). *Id.* at 14.

11       Finally, H&A argue that this case should be dismissed, or in the alternative, transferred,

12   because venue in the Northern District of California is improper. *Id.* at 14-15. H&A assert that all

13   named Defendants  reside in the Eastern District of Tennessee. *Id.* at 14. Furthermore, H&A argue

14   that all of Plaintiff's claims for damages arise out of the Tennessee Case, which was filed in the

15   Blount County Chancery Court located in the Eastern District of Tennessee. *Id.*

16                    **1.    Plaintiff's Opposition to H&A Motion**

17       Plaintiff disputes that he obtained a discharge in bankruptcy without identifying any claim he

18   was required to identify. Plaintiff's Memorandum of Points and Authorities in Opposition to H&A

19   Motion (Dkt. No. 22) ("Opp. to H&A Motion") 1. Plaintiff maintains that at the time he filed his

20   motion to convert his Chapter 13 bankruptcy to a Chapter 7, he disclosed as much as knew about any

21   claims against CQ. *Id.* at 1-2. Plaintiff claims that he did, at times, "entertain the vague hope that

22   defendant CQ, and possibly defendant Krueger, might someday be held to answer for all that they

23   had done[,]" but in 2010 he had not consulted with an attorney or conducted any legal research.

24   Declaration of Stuart Kaufman Re: Support of His Opposition to Two Separate Motions to Dismiss

25   or Strike ("Kaufman Decl.") (Dkt. Nos. 21-1, 22-1)[2] at ¶ 5. Plaintiff asserts that he didn't think he

26   needed to disclose "matters that in the state of [his] then-present knowledge existed mainly in the

27   realm of daydreams." *Id.* at ¶ 6. Furthermore, he claims his thoughts during that time of seeking

28

---

[2] Plaintiff has filed the same declaration in support of both of his opposition briefs.

legal redress were a "vague hope," and that does not amount to a reportable asset. *Id.*

Plaintiff claims it was not until early 2011, after his bankruptcy discharge and the dismissal of the Tennessee Case, that he began to consult with lawyers and conduct legal research. *Id.* at ¶ 5. Plaintiff claims that he consulted with about a half dozen attorneys in early 2011, and each one explained to him that his case was too speculative to be taken on a contingency fee basis because it was difficult to assess the quantifiable value of Plaintiff's potential claims. *Id.* at 7. Plaintiff states that he agrees with the opinions of these lawyers, but is confident that the amount is well above the jurisdictional requirement. *Id.* at ¶ 8.

Plaintiff asserts that to the extent Defendants believe Plaintiff's claims have sufficient merit and value, that belief is "due entirely to [Plaintiff's] diligent post-discharge labor and skill in researching and pursuing these claims[.]" *Id.* at ¶ 11. Therefore, Plaintiff asserts that these claims now represent as an asset of Plaintiff's that were openly and rightfully acquired post-discharge. *Id.*

In opposition to H&A's assertion that this Court lacks personal jurisdiction, Plaintiff argues that H&A's contacts with California are irrelevant because H&A are subject to jurisdiction because they joined with CQ&K to injure Plaintiff in California. Opp. to H&A Motion 3-4. Plaintiff maintains that CQ&K's contacts with California "are a sufficient jurisdictional predicate for all defendants." *Id.* at 4. In support of his assertion that H&A are liable for malicious prosecution, Plaintiff argues that Anderson's admission of failing to research California law is evidence of reckless indifference, or malice. *Id.* at 3.

Plaintiff also argues that H&A are subject to personal jurisdiction because the minimum contacts test is satisfied. *Id.* Plaintiff maintains that H&A the Tennessee Case, which was filed for no other reason than to harass, oppress and grievously injure Plaintiff, was initiated with service of process on Plaintiff by mail in San Francisco, California. *Id.* at 5. Furthermore, Plaintiff claims that H&A were well aware of Plaintiff's history with CQ&K at the time they filed the Tennessee Case. Additionally, Plaintiff maintains that the Tennessee Case was only the beginning "of a long campaign of harassment, ruin, humiliation, and oppression, carried on against plaintiff in retaliation[.]" *Id.* Plaintiff asserts that for these reasons, H&A purposefully directed wrongful activities toward Plaintiff in California, and therefore should anticipate being haled into court here.

**United States District Court**
For the Northern District of California

1   *Id.* at 5-6.

2        Plaintiff further claims that H&A are subject to personal jurisdiction because they are

3   judicially estopped from arguing that their own contacts with California are not sufficient because of

4   arguments CQ made in its opposition to Plaintiff's jurisdictional challenge in the Tennessee Case.

5   *Id.* at 6-7.

6        With respect to H&A's argument that Plaintiff had not properly served Anderson, Plaintiff

7   claims that Anderson had a duty to waive service since she actually received copies of the summons

8   and complaint.  *Id.* at 8.   In the alternative, Plaintiff argues he should be allowed to cure any defect

9   in service.  *Id.*

10       Next, Plaintiff argues that the litigation privilege does not apply in this case because it does

11  not apply to malicious prosecution cases and the privilege does not immunize the proceedings

12  themselves, only communications that have some relation to judicial proceedings.  *Id.*

13       Plaintiff next argues that Defendants are wrong regarding his failure to meet the favorable

14  termination element of malicious prosecution because the underlying proceeding was the

15  administrative hearing in front of the Labor Commissioner, to which Plaintiff received a favorable

16  termination.  *Id.*  Plaintiff asserts that "a malicious prosecution action can be based on underlying

17  proceedings that were instituted by the malicious prosecution plaintiff, himself."  *Id.*

18       Plaintiff argues that H&A's argument regarding improper venue is irrelevant for lack of

19  sufficient showing and is barred by the doctrine of judicial estoppel.  *Id.* at 10.  Furthermore,

20  Plaintiff asserts that the center of gravity of the events of these claims are in California, not

21  Tennessee.  *Id.*

22       Finally, in his declaration, Plaintiff states that should the Court find that he has not

23  adequately pleaded a cause of action for defamation, he is prepared to amend his Complaint to plead

24  certain defamatory communications and provide emails that Krueger had sent to other CQ

25  employees.  Kaufman Decl. ¶¶ 14-16

26              **2.      H&A's Reply Brief**

27       In Reply, H&A argue that because Plaintiff admits that his claims against H&A arose out of

28  the Tennessee Case, he has helped H&A in arguing that Plaintiff's claims are subject to dismissal

1   under the litigation privilege, for lack of personal jurisdiction, and California's anti-SLAPP statute.

2   Defendants Howard & Howard P.C. and Heather Anderson's Reply to Plaintiff's Opposition (Dkt.

3   No. 26) (H&A Reply) 2. They state that "Plaintiff cannot sue Tennessee attorneys in California

4   merely for filing a lawsuit in Tennessee." *Id.*

5       Next, H&A assert that Plaintiff has not pointed to any contacts between H&A and California

6   that would allow the exercise of personal jurisdiction over them. *Id.* at 3. Instead, Plaintiff mentions

7   contacts with California that are related to the prior administrative proceedings with CQ, with which

8   H&A were not involved. *Id.* H&A also claim that Plaintiff's argument that jurisdiction is proper

9   because H&A are liable with CQ&K for malicious prosecution is "nonsense" because it does not

10  create any contacts between H&A and California. *Id.*

11      H&A next argue that Plaintiff's judicial estoppel argument is flawed because H&A were not

12  parties to the Tennessee Case, and therefore is not bound to the Tennessee Case. *Id.* at 4.

13  Furthermore, H&A assert that they do not take a position that is inconsistent than what was argued

14  there. *Id.*

15      H&A argue that judicial estoppel should instead apply to Plaintiff's claims since he failed to

16  disclose them as an asset when he converted his bankruptcy. *Id.* at 4-5. Additionally, H&A assert

17  that Plaintiff's contention that he was not able to list these claims on his schedules lacks merit since

18  the disclosure requires "contingent and unliquidated" claims, which is what his claims were. *Id.* at

19  5.       Finally, H&A assert that Plaintiff's argument that Anderson was required to waive service of

20  process is inapposite because Plaintiff never requested a waiver, as required by Federal Rule of Civil

21  Procedure 4(d)(1).

22      **C.      The Capital Quest Motion**

23      On September 9, 2011, Defendants Capital Quest, Inc. and William Krueger ("CQ&K") filed

24  a Motion to Strike Plaintiff Kaufman's State Law Claims Pursuant to Cal. Code of Civil Procedure §

25  425.16 ("CQ Motion") (Dkt. No.16). In this motion, CQ&K assert that the gravamen underlying

26  Plaintiff's complaint is that Defendants damaged Plaintiff by improperly opposing Plaintiff's

27  administrative actions regarding his employment status and by commencing the Tennessee Case.

28  CQ Motion 2. CQ&K argue that Plaintiff's complaint should be stricken in its entirety because

**United States District Court**

For the Northern District of California

1    Defendants' actions are protected by California's anti-SLAPP statute, Cal. Code Civ. P. § 425.16.

2    *Id.* at 2-3.  CQ&K claim the analysis of an anti-SLAPP motion is a two-step process: first, CQ&K

3    must establish that Plaintiff's cause of action arises from protected activity; second, if CQ&K meets

4    this burden, Plaintiff must show a probability of prevailing on each of his claims.  *Id.* at 4-5.  CQ&K

5    assert that they have established their burden because "Plaintiff's complaint is unquestionably based

6    on CQ&K's protected activities relating to administrative actions in California, and litigation actions

7    in Tennessee." *Id.* at 5.

8        CQ&K also argue that Plaintiff cannot show a probability of prevailing on any of his causes

9    of action, and therefore their motion should be granted.  *Id.* at 6.

10       Specifically, CQ&K claim that Plaintiff's first cause of action for abuse of process should be

11   stricken because it is barred by the litigation privilege.  CQ&K further claim that even if Plaintiff's

12   allegations were true, they cannot support an abuse of process claim because a party's motivation for

13   commencing a lawsuit is irrelevant for this tort.  *Id.* at 6-7.

14       Next, CQ&K assert that Plaintiff cannot show a probability of success for malicious

15   prosecution because the Tennessee Case was not terminated in Plaintiff's favor, as required for this

16   tort.  *Id.* at 7-8.  CQ&K argues that because the Tennessee Case was terminated due to Plaintiff's

17   bankruptcy discharge, it cannot be said that it was decided on its merits in Plaintiff's favor.  *Id.* at 8.

18       CQ&K next argue that Plaintiffs's intentional infliction of emotional distress claim should be

19   stricken because California's litigation privilege precludes such cases "based on communications in

20   furtherance of the objects of the litigation." *Id.* (citing *Silberg v. Anderson*, 50 Cal.3d 205, 210-11,

21   219-20 (Cal. 1990).  Because Plaintiff's alleged emotional distress arises from CQ&K's actions in

22   the various administrative actions and the Tennessee Case, CQ&K argue that Plaintiff may not state

23   a claim for IIED.  *Id.*  CQ&K also assert that Plaintiff's IIED cause of action should be stricken

24   because it is based on the same actions giving rise to Plaintiff's abuse of process and malicious

25   prosecution claims.  *Id.* at 8-9.

26       Next, CQ&K argue that Plaintiff's fraud claim should also be stricken because it is based on

27   the same protected activity subject to California's anti-SLAPP law as Plaintiff's other claims.  *Id.* at

28   9.  According to CQ&K, the basis for an anti-SLAPP motion "is that the principal wrong underlying

**United States District Court**
For the Northern District of California

1   the entire lawsuit encompasses protected activity." *Id*. (quoting *Bleavins v. Demarest*, 196

2   Cal.App.4th 1533, 1541 (Ct. App. 2011)).  Here, CQ&K assert that the gravamen of Plaintiff's fraud

3   claims arise out of CQ&K's attempts to enforce its contract with Plaintiff before the multiple

4   administrative bodies and the Tennessee court. *Id.* at 9-10.  Furthermore, CQ&K find it "perplexing"

5   that Plaintiff alleges that CQ&K committed fraud by never intending to treat Plaintiff like an

6   independent contractor since Plaintiff's complaint states that CQ&K tried to treat Plaintiff like an

7   independent contractor in the administrative actions and Tennessee Case.  *Id.* at 10.  Additionally,

8   CQ&K argue that Plaintiff's allegation that CQ&K defrauded him into paying self-employment tax

9   is actually not fraud; instead, CQ&K maintain, this was "a consequence flowing from CQ&K's

10  actions before the administrative bodies to prove that Plaintiff was an independent contractor."  *Id.*

11  Finally, CQ&K assert that Plaintiff cannot amend this cause of action because a fraud claim based

12  on judicial and administrative actions is also barred by the litigation privilege.  *Id.*

13          CQ&K argue that Plaintiff's final claim, defamation, must be stricken because it is also

14  based on protected activity subject to California's anti-SLAPP statute. *Id.*  CQ&K further argue that

15  Plaintiff demonstrate a probability of success for his defamation claim because Plaintiff has not

16  alleged any false statement made by CQ&K.  *Id.* at 11.  What is more, CQ&K states that Plaintiff's

17  allegations arise from statements CQ&K allegedly made about the administrative proceedings and

18  the Tennessee Case, which are protected by the anti-SLAPP statute. *Id.*  With respect to Plaintiff's

19  allegation that CQ&K defamed Plaintiff by discussing the administrative actions and Tennessee

20  Case with other CQ employees, CQ&K argue they are protected by the common interest privilege

21  under Cal. Civ. Code § 47(c).  *Id.* at 11-12. They claim that other CQ consultants needed to know

22  about these proceedings and the consequences that would result from being classified as an

23  employee.  *Id.* at 12.  Furthermore, CQ needed to discuss these proceedings to other contractors who

24  were potential witnesses.  *Id.*  CQ&K argue that any discussions of this nature are conditionally

25  privileged, pursuant to § 47(c).  *Id.*

26          In addition, Krueger claims that neither he, nor anyone authorized on CQ's behalf, has been

27  requested to provide a job reference for Plaintiff.  Declaration of William Krueger in Support of CQ

28  Motion ("Krueger Decl.") (Dkt. No. 16-1) at ¶ 2.  Krueger further claims that his only discussions

United States District Court

For the Northern District of California

1   with former employers of Plaintiff have been for the purpose of securing information to support

2   CQ&K's claims. *Id.* at ¶ 4. According to Krueger, neither he, nor anyone authorized on CQ's

3   behalf, held any discussions about Plaintiff with anyone who was not an employee, contractor or

4   customer of CQ. *Id*. at ¶ 5. Finally, Krueger claims that all of these discussions asserted by Plaintiff

5   were related to Plaintiff's administrative actions or the Tennessee Case. *Id.* at ¶ 6.

### 1.   Plaintiff's Opposition to the CQ Motion

7       In his opposition to the CQ Motion, Plaintiff argues that Defendants' conduct falls within the

8   legislative intent of California's anti-SLAPP statute, explicitly referenced in Cal. Code Civ. P. §

9   425.16(a). Plaintiff's Memorandum of Points and Authorities in Opposition to Motion of

10  Defendants CQ&K to Strike ("Opp. to CQ Motion") (Dkt. No. 21) 2. Specifically, Plaintiff

11  contends that CQ&K attempted to cheat him out of earned compensation, opposed his claim for

12  unemployment compensation without good cause, wrongfully forced him to pay federal self-

13  employment tax, and that Krueger orally threatened plaintiff with ruin, to which he did by filing the

14  Tennessee Case. *Id.*

15      Plaintiff asserts that "[t]he SLAPP in this story is The Tennessee Case, which was exactly the

16  kind of retaliation that Krueger had threatened; however, because a motion to dismiss that case as a

17  SLAPP could not be made in a Tennessee court, the instant case must be made to serve in lieu

18  thereof, as it exactly furthers the intent of the Legislature in enacting this statute." *Id.* at 2-3.

19      Plaintiff claims that neither Defendant has made out a colorable claim to strike under the

20  anti-SLAPP statute. *Id.* at 3. Plaintiff claims that CQ&K's arguments are "a dog's breakfast of

21  illogical . . . reasoning." *Id.*

22      With respect to the malicious prosecution cause of action, Plaintiff argues that he achieved

23  the requisite favorable termination through the decisions made by the Labor Commissioner, the

24  Unemployment Compensation Insurance Board of Appeals, and the Internal Revenue Service in

25  response to Plaintiff's request for a determination of his employment status. *Id.* 3-4. Plaintiff argues

26  that it is undisputed that the "Wage Award" by the Labor Commissioner was resolved on the merits

27  in Plaintiff's favor, and that it must be seen as the underlying action that supports the instant case.

28  *Id.* at 4.

**United States District Court**
For the Northern District of California

1    Plaintiff also argues that because CQ&K did not appeal the Wage Award, the decision

2  became *res judicata*.  *Id.*  Plaintiff maintains that "all of the material issues raised in the parties'

3  motions to strike or dismiss were fully litigated in the proceedings brought by plaintiff herein before

4  the Labor Commissioner, or at the very least, CQ had an adequate opportunity to do so[.]" *Id.* at 5.

5    Plaintiff next argues that because the Labor Commissioner found that Plaintiff was an

6  employee of CQ, and not an independent contractor, he did not breach his contract by bringing a

7  wage claim, and therefore, CQ&K cannot bring a claim for indemnity (the Tennessee Case) because

8  "there was no judicially cognizable loss to be indemnified." *Id.* at 5-6.  Plaintiff asserts that because

9  all these findings of fact and conclusions of law merged into a decision that became a final

10 judgement of a court, the claims brought in the Tennessee Case were barred by *res judicata* and

11 collateral estoppel.  *Id.* at 6.  Accordingly, Plaintiff maintains that "[a]ll defendants herein had,

12 therefore, *as a matter of law and not an issue of fact*, no probable cause to file The Tennessee

13 Case[.]" *Id.*

14    Plaintiff further argues that CQ&K may not invoke the litigation privilege because they have

15 not met the threshold that the instant case is subject to the anti-SLAPP statute.  *Id.* at 7.

16 Additionally, Plaintiff asserts that the litigation privilege does not apply to judicial or quasi-judicial

17 proceedings themselves, but only to communications made in the course thereof.  *Id.*

18    In response to CQ&K's argument regarding intentional infliction of emotional distress,

19 Plaintiff claims it is defective for two reasons.  *Id.* at 8.  First, it is nothing more than a summary

20 restatement of CQ&K's mistaken arguments seeking dismissal under the anti-SLAPP statute and

21 litigation privilege.  *Id.*  Second, Plaintiff contends he does not seek emotional distress damages as a

22 result of CQ&K's conduct before the administrative proceedings, but only as a result of the

23 Tennessee Case.  *Id.*   He asserts that the emotional toll of CQ&K's other conduct was pleaded to

24 explain that Plaintiff was especially susceptible to emotional distress. *Id.*

25    Similarly, Plaintiff also asserts that CQ&K's argument regarding Plaintiff's fraud claim is

26 also a restatement of CQ&K's mistaken anti-SLAPP and litigation privilege arguments.  *Id.*

27 Furthermore, Plaintiff contends that CQ&K's fraudulent conduct began before the Tennessee Case

28 was commenced, so it did not fall under any protected activity.  *Id.*

**United States District Court**
For the Northern District of California

1    Lastly, with respect to Plaintiff's defamation claim, Plaintiff again asserts that CQ&K have

2  used the same mistaken arguments regarding the anti-SLAPP statute and the litigation privilege.  *Id.*

3  Furthermore, Plaintiff maintains that if the Court finds he did not state of claim for defamation, he is

4  prepared to amend his Complaint to plead specific allegations.  *Id.* at 9.

5              **2.      CQ&K's Reply Brief**

6    In reply to Plaintiff's Opposition, CQ&K assert that Plaintiff has confused the purpose and

7  application of California's anti-SLAPP statute.  Defendants Capital Quest Inc. and William

8  Krueger's Joint and Several's Memorandum of Points and Authorities in Reply to Plaintiff's

9  Opposition ("CQ Reply") (Dkt. No. 27) 1.  Furthermore, CQ&K argue that the anti-SLAPP statute is

10  irrelevant to the Tennessee Case, and Plaintiff's argument in this regard is illogical and not

11  supported by legal authority.  *Id.* at 1-2.

12    CQ&K next argue that Plaintiff's *res judicata* and collateral estoppel arguments lack merit

13  because the indemnity provision of Plaintiff's employment contract, expenses and attorney fees were

14  never at issue in the administrative proceedings.  *Id.* at 2.

15    Next, CQ&K argue that the anti-SLAPP statute does apply to this case because filing a

16  complaint is a petitioning activity, and therefore is protected under the statute.  *Id.* at 3.

17  Furthermore, CQ&K argue that California law, including the anti-SLAPP statute, applies to the

18  instant case because Plaintiff's only possible basis for jurisdiction is diversity.  *Id.* at 3-4.

19    CQ&K also claim that Plaintiff has failed to show, with admissible evidence, that he has a

20  probability of prevailing on any of his claims.  *Id.* at 6.  Specifically, CQ&K assert that Plaintiff

21  cannot state a claim for malicious prosecution because he cannot show that he meet the favorable

22  termination element and because Plaintiff initiated the administrative actions that he claims were the

23  underlying actions.  *Id.* at 6-8.

24    Furthermore, CQ&K assert that the rest of Plaintiff's claims are barred by the litigation

25  privilege.  *Id.* at 9.  Here, CQ&K maintain that there is no basis for Plaintiff's opposition to the

26  litigation privilege because the privilege is broadly applied and extends to communications that bear

27  some relation to a lawsuit.  *Id.*  CQ&K further maintain that all of Plaintiff's claims are grounded on

28  communications related to the administrative proceedings and the Tennessee Case.  *Id.* at 9-12.

**United States District Court**
For the Northern District of California

1    Finally, CQ&K maintain that judicial estoppel bars all of his claims because he failed to

2    disclose them in his bankruptcy schedules. *Id.* at 12-13. CQ&K claim that Plaintiff did in fact know

3    about his instant claims during his pending bankruptcy, and his failure to disclose them effectively

4    precludes him from brining them now. *Id.* at 13. CQ&K point to several passages from Plaintiff's

5    declaration that they assert demonstrate Plaintiff had knowledge of his claims before filing his

6    motion to covert his bankruptcy. *Id.* at 13. Furthermore, CQ&K also point to an email from

7    Plaintiff to Krueger, dated November 2, 2009, wherein Plaintiff states CQ&K would be liable for

8    malicious prosecution if the Tennessee Case was not dismissed. *Id.* at 14; Declaration of William

9    Krueger in Support of CQ Reply (Dkt. No. 27-1) at ¶ 2 and Exhibit A. CQ&K assert that this email

10   proves that Plaintiff had knowledge of his instant claims during his pending bankruptcy. CQ Reply

11   14.

12   **III.    ANALYSIS**

13   The Court concludes that Plaintiffs claims should be dismissed because they are barred by

14   judicial estoppel and because Plaintiff fails to state a claim for malicious prosecution.

15   **A.    CQ&K's Request for Judicial Notice**

16   As a preliminary matter, the Court must determine whether to take judicial notice of the

17   Bankruptcy Court documents put forth by CQ&K. *See* Dkt. No. 27-2.

18   The standard for judicial notice is set forth in Rule 201 of the Federal Rules of Evidence,

19   which allows a court to take judicial notice of a fact not subject to "reasonable dispute," either

20   because it is "generally known within the territorial jurisdiction of the trial court" or it is "capable of

21   accurate and ready determination by resort to sources whose accuracy cannot reasonably be

22   questioned." Fed. R. Evid. 201(b). The court "may take judicial notice of filings and other matters

23   of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 fn.6 (9th Cir.

24   2006). Additionally, courts may take judicial notice of documents referenced in the complaint.

25   *Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 fn. 2 (9th Cir. 2006); *Shurkin v. Golden State*

26   *Vintners, Inc.*, 2005 WL 1926620, *7 (N.D. Cal. Aug. 10, 2005) ("Exhibit F . . . is explicitly

27   referenced in Plaintiff's Complaint, and should, therefore, be judicially noticed.").

28   Here, because these bankruptcy documents are matters of public record and are referenced in

21

United States District Court

For the Northern District of California

1  Plaintiff's Complaint (*See* Compl. at ¶ 44), CQ's request for judicial notice is GRANTED.  However,

2  this request is limited in that the Court does not take notice of the truth of any factual findings stated

3  in the noticed documents.  *See Wyatt v. Terhune*, 315 F.3d 1108, 1114, fn. 5 (9th Cir. 2003) ("[W]e

4  have held that taking judicial notice of findings of fact from another case exceeds the limits of [Rule]

5  201.").

6      **B.**    **Plaintiff is Judicially Estopped From Bringing Claims Not Disclosed in his Bankruptcy Schedules**

7  

8      **1.**    **Legal Standard Under Federal Rule of Civil Procedure 12(b)(6)**

9      A complaint may be dismissed for failure to state a claim for which relief can be granted

10  under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "The purpose of a motion to dismiss

11  under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N. Star Int'l v. Ariz. Corp.*

12  *Comm'n*, 720 F.2d 578, 581 (9th Cir.1983).  Generally, a plaintiff's burden at the pleading stage is

13  relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which

14  sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that

15  the pleader is entitled to relief."  Fed.R.Civ.P. 8(a).

16      In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes

17  "all allegations of material fact as true and construe(s) them in the lights most favorable to the

18  nonmoving party."  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal

19  may be based on a lack of a cognizable legal theory or on the absence of facts that would support a

20  valid theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint

21  must "contain either direct or inferential allegations respecting all the material elements necessary to

22  sustain recovery under some viable legal theory."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562,

23  127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d

24  1101, 1106 (7th Cir.1984)).  The factual allegations must be definite enough to "raise a right to relief

25  above the speculative level."  *Id*. at 555.  However, a complaint does not need detailed factual

26  allegations to survive dismissal.  *Id*.  Rather, a complaint need only include enough facts to state a

27  claim that is "plausible on its face."  *Id*. at 570.  That is, the pleadings must contain factual

28  allegations "plausibly suggesting (not merely consistent with)" a right to relief.  *Id*. at 1557 (noting

United States District Court

For the Northern District of California

1    that this requirement is consistent with Fed.R.Civ.P. 8(a)(2), which requires that the pleadings

2    demonstrate that "the pleader is entitled to relief").

3                    **2.    CQ&K's Notice of Joinder**

4            As a threshold matter, CQ&K filed a notice of joinder in H&A's Motion at Part V, regarding

5    judicial estoppel.  Dkt. No. 17.  Plaintiff objects to this notice because it was not filed with a

6    certificate of service and he claims he was not served with a copy.  Dkt. No. 23.  The Court

7    overrules Plaintiff's objection to CQ&K's notice of joinder, because, although it was filed without a

8    certificate of service, Plaintiff received a copy of the notice via the Court's Electronic Case Filing

9    (ECF) system.  Indeed, pursuant to General Order No. 45, chapter IX, section B, "[t]he automatic e-

10   mail message generated by the ECF system and sent to all parties whose e-mail addresses have been

11   registered in the case, . . . shall constitute service on the attorney or other persons in a case subject to

12   ECF."  Therefore, CQ&K's joinder in H&A's Motion, Part V is proper.

13                   **3.    Analysis**

14           H&A asserts that all of Plaintiff's claims are barred by judicial estoppel because he failed to

15   list these claims in his amended Schedules as part of his conversion to a Chapter 7 bankruptcy.

16   H&A Motion 12-13.  The Court agrees.

17           Judicial estoppel is an equitable doctrine that precludes a party from seeking an unfair

18   advantage by asserting one position, then taking advantage of an inconsistent position at a later time.

19   *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).  In determining whether

20   to apply judicial estoppel, courts may consider "(1) whether a party's later position is 'clearly

21   inconsistent' with its original position; (2) whether the party has successfully persuaded the court of

22   the earlier position, and (3) whether allowing the inconsistent position would allow the party to

23   'derive an unfair advantage or impose an unfair detriment on the opposing party.'"

24   *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008).

25           In the bankruptcy context, the judicial estoppel doctrine applies to bar a debtor from

26   asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's

27   schedules or disclosure statements.  *Hamilton*, 270 F.3d at 783.  Prohibiting a debtor from later

28   raising undisclosed claims protects the integrity of the bankruptcy system.  *Id.*  Judicial estoppel

**United States District Court**
For the Northern District of California

applies "when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." *Id.* at 784.  In *Hamilton*, the court applied the doctrine of judicial estoppel to bar plaintiff's claims against his insurance company for bad faith and breach of contract because he failed to disclose these claims as assets in his bankruptcy schedules.  *Id.* at 784-85.  The court held that plaintiff clearly asserted inconsistent positions simply by raising claims he failed to list as an asset.  *Id.* at 784.  The court also stated that it was immaterial that plaintiff did not file this case for one year after filing for bankruptcy; what mattered is that he had knowledge of them, which was evidenced by letters from his lawyer to defendant that contained threats of litigation.  *Id.* at 784-85.

Here, the Court finds that judicial estoppel bars Plaintiff's claims.  Plaintiff admits that he did not list the present claims on his amended bankruptcy schedules, but argues that he failed to do so because he did not have "actual knowledge as to the validity or value of any specific claim." Kaufman Decl. at ¶ 7.  He states that he "did, at intervals, entertain the vague hope that defendant[s] . . . might someday be held to answer for all that they had done . . . but in 2010, [he] had not consulted any attorney about taking steps in that direction."  *Id.* at ¶ 5.  Plaintiff also argues that he did not think Schedule B[3] required him to disclose "matters that in the state of my then-present knowledge existed in the realm of daydreams."  *Id.* at ¶ 6.

The Court is not persuaded by Plaintiff's arguments.  The Court finds that Plaintiff was aware of sufficient facts to know that a potential cause of action against Defendants existed.  When he moved to convert his bankruptcy to a Chapter 7, he identified his unliquidated and disputed debt to Capital Quest.  *In re Kaufman,* Dkt. 48, Motion to Convert.  He also amended his schedules that he had filed in connection with his bankruptcy.  *See* Dkt. No. 50 – Amended Schedules.  However, he admits that he did not amend his Schedule B in order to identify the potential claims against Defendants.  The facts that Plaintiff claims constitute the instant causes of action occurred *before* he filed his amended Schedule B.  He was therefore required to include these unliquidated, contingent

---

[3] "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each." Kaufman Decl. at ¶ 6 (quoting Box 21 of Schedule B, to the Bankruptcy Petition).

United States District Court

For the Northern District of California

1   claims.  The Court finds that it is not significant that Plaintiff was unable to attach a monetary value

2   to these claims at the time he amended his schedules, or that he was unsure of their merit.  Schedule

3   B requires that *all* "contingent and unliquidated" claims be disclosed.  Therefore, Plaintiff was

4   granted a discharge after failing to disclose claims he now seeks to bring.  Because he failed to

5   disclose the claims with his Chapter 7 bankruptcy, his claims are barred.

6          **C.**       **Plaintiff Has Failed to State a Claim for Malicious Prosecution**

7          Plaintiff asserts that his claim for malicious prosecution arises out of Defendants' filing of

8   the Tennessee Case.  To establish a malicious prosecution claim, "the plaintiff must show that the

9   prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal

10  termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated

11  with malice."  *Soukup v. Law Offices of Herbert Hafif*, 39 Cal.4th 260, 292 (Cal. 2006).  Here,

12  Defendants assert that Plaintiff's claim must fail because he cannot establish that the Tennessee Case

13  was terminated in his favor because it was dismissed due to Plaintiff's bankruptcy discharge.  The

14  Court agrees.

15         "The theory underlying the requirement of favorable termination is that it tends to indicate

16  the innocence of the accused[.]"  *Casa Herrera, Inc. v. Beydoum*, 32 Cal.4th 336, 341 (Cal. 2004)

17  (quoting *Jaffe v. Stone*, 18 Cal.2d 146, 150 (Cal. 1941)).  In order for a termination to be considered

18  favorable to Plaintiff, it must have reflected the merits of the action.  *Id.* at 342.  A technical or

19  procedural termination, as opposed to a substantive termination, does not establish a malicious

20  prosecution claim.  *Id.  See, e.g., Lackner v. Lacroix*, 25 Cal.3d 747, 751 (Cal. 1979) ("Termination

21  of an action by a statute of limitations defense must be deemed a technical or procedural. . .

22  termination"); *Fuentes v. Berry*, 38 Cal.App.4th 1800, 1808 (1995) ("a dismissal resulting from a

23  settlement generally does not constitute a favorable termination [citation].  In such a case the

24  dismissal reflects ambiguously on the merits of the action as it results from the joint action of the

25  parties[.]").

26         Here, Plaintiff himself alleges that the Tennessee Case "was concluded at an early stage only

27  because Plaintiff . . . was forced into a Chapter 7 bankruptcy proceeding."  Compl. at ¶ 67.  Plaintiff

28  does not address his failure to meet the favorable termination element in his opposition briefs.

Plaintiff cannot allege favorable termination because the termination had nothing to do with the merits.  Therefore, the Court concludes that Plaintiff's malicious prosecution cause of action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**IV.     CONCLUSION**

        In conclusion, because Plaintiff is judicially estopped from bringing his claims and because he fails to plead a cause of action for malicious prosecution, the Court GRANTS H&A's Motion to Dismiss.  Furthermore, because the CQ&K Defendants are properly joined in H&A's Motion, this dismissal applies to all Defendants.  As dismissal is appropriate for these reasons, the Court declines to address the remaining arguments of the parties.  The Clerk shall close the file.

        IT IS SO ORDERED.

Dated: November 22, 2011

_____
JOSEPH C. SPERO
United States Magistrate Judge

**United States District Court**
For the Northern District of California

26